**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

RANDALL JACKSON,          )
        Plaintiff,       )
                     )
      v.              )    Case No. 12-4018-CV-C-FJG
                     )
LARRY CRAWFORD, et al.,   )
        Defendants.   )

<u>ORDER</u>

Pending before the Court are (1) Plaintiff's Motion for Partial Summary Judgment (Doc. No. 129); (2) State Defendants' Motion for Summary Judgment (Doc. No. 130); (3) Motion for Summary Judgment on Behalf of Defendants Gateway Foundation, Inc. and Duane Cummins (Doc. No. 132); and (4) Plaintiff's Motion to Supplement the Court Record (Doc. No. 148). As an initial matter, plaintiff's unopposed motion to supplement the record with complete transcripts of six depositions will be **GRANTED**. The Court turns to the merits of the motions for summary judgment.

## I.    Background

Plaintiff filed the pending action on January 6, 2012. On April 9, 2012, the Court dismissed plaintiff's pro se complaint. On appeal, on March 28, 2014, the Eighth Circuit vacated the Court's order dismissing this case, and remanded for further consideration. Counsel entered an appearance on behalf of plaintiff on June 27, 2014. On August 15, 2014, plaintiff filed his First Amended Class Action Complaint (Doc. No. 42), alleging that defendants violated his rights as an atheist by requiring him to participated in substance abuse treatment programs at the MDOC such as Alcoholics Anonymous ("AA"), which requires its participants to recognize and rely upon a "Higher Power" to remedy their problems with alcohol. Plaintiff has also sought to list his religion as

atheism on the facesheet to his prison file, but MDOC has denied this request, responding that atheism is a philosophy, not a religion.

Plaintiff makes claims on behalf of himself and a putative class under both (1) 42 U.S.C. § 1983, through the First and Fourteenth Amendments to the United States Constitution; and (2) the Religious Land Use Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. For both, plaintiff claims that his and the putative class members' rights were violated by (1) not being allowed to declare atheism as their religion on their inmate facesheets; and (2) being forced to participate in substance abuse treatment programs that are based on a belief in a deity. On February 6, 2015, the Court entered an Order granting the state defendants' motion to dismiss as to (a) claims against the state defendants in their official capacities for monetary damages, (b) claims against the state defendants in their individual capacities under RLUIPA, and (c) claims related to actions taken in 2006 as barred by the statute of limitations. See Order, Doc. No. 83. In the same Order, the Court dismissed all claims against defendant Salsbury. Id. On May 8, 2015, the Court entered an Order denying plaintiff's motion for class certification; however, the Court indicated that if the plaintiff was able to develop evidence during discovery supporting numerosity, the Court may reconsider its position on that issue. See Order. Doc. No. 96. On June 23, 2015, the Court denied Gateway and Cummins' motion to dismiss. See Order, Doc. No. 106.

Remaining defendants in this matter are (1) George Lombardi, Director of the Missouri Department of Corrections ("MDOC"); (2) Douglas A. Worsham, the Supervisor of Religious/Spiritual Programming within the Division of Human Services for the MDOC; (3) Larry Crawford, the Director of the MDOC when plaintiff was incarcerated at MDOC's Western Reception, Diagnostic, and Correctional Center ("WRDCC") in St. Joseph, Missouri; (4) Martha V. Nolin, the Assistant Division Director, Substance Abuse Services in the Division of Offender Rehabilitative Services; (5) Alan Earls, Deputy

Director of the Division of Adult Institutions; (6) Cyndi Prudden, Deputy Director, Division of Adult Institutions; (7) Isaac "Sonny" Collins, Warden at Maryville Treatment Center (these seven defendants, collectively, are "state defendants"); (8) Gateway Foundation, Inc., also known as Gateway Foundations Correction, an Illinois corporation that has contracted with MDOC to design and operate MDOC's drug and alcohol rehabilitation programs; and (9) Dwayne Cummins, Gateway Foundation Corrections' Program Director at MDOC's Ozark Correctional Center ("OCC"). All except for Gateway Foundation, Inc., and Dwayne Cummins (who are not state employees or entities) are sued in their individual and official capacities.

## II. Facts[1]

### A. Face Sheet Claim

MDOC Inmate face sheets and intake forms include a religious preference which is used for a variety of administrative tasks, including accommodating prisoners of different religious faiths; examples of accommodations could include attendance at religious gatherings within a prison, religious dietary restrictions, or end of life needs. The face sheet may reflect one of dozens of possible selections offered to inmates; while Jackson was incarcerated a nonreligious person had possible selections of "no religious preference" and "unknown." After plaintiff's incarceration, MDOC officials added the option of "other" to the religious preference selections that can be reflected on the face sheet.

The Religious Programming Advisory Council, selected under the leadership of defendant Worsham, approved the following "religions" or "spiritualities" for

---

[1] Plaintiff's statement of material facts (Doc. No. 129-1) is 89 pages long, and consists of 284 separate paragraphs. Needless to say, this is not a "concise statement of uncontroverted material facts" as contemplated by Local Rule 56.1(a). Incredibly, when these drafting errors were pointed out to plaintiff by defendants in their responses, plaintiff replied by filing a 254-page document (Doc. No. 150) span 254 pages. The Court, therefore, summarizes plaintiff's facts only to the extent necessary to resolve the motions before it.

accommodation: Buddhism; Christian – Roman Catholic; Christian – General; Nation of Islam; Judaism; Messianic; Al-Islam/Muslim; Moorish Science Temple of America; Native American Spirituality; Wicca; Asatru/Odinism; Christian Separatist Church Society; Ethical Culture/Society; Sufism; Hare Krishna; Rastafarian Spirituality; Satanism; and Vedanta Society. Certain of these religions receive full group accommodation in the prison system; others are approved only for "solitary" practice.

On August 1, 2007, while a prisoner at Potosi Correctional Center, Jackson wrote the Records Department requesting that his Face Sheet reflect the fact that he was an atheist. See Doc. No. 129, Ex. 19 at MDOC 6480. On August 20, 2007, the Records Department informed Jackson that the "Chaplain states that Atheism is not one of the States [sic] recognized religions," that "'No Religious Preference' is the most accurate choice" for him "from the list," and that his request to have his Face Sheet reflect the fact that he is an atheist was denied. Doc. No. 129, Ex. 19 at MDOC 6475-76. On August 23, 2007, Jackson filed a formal grievance, again requesting that he be permitted to select atheism as his religion. On October 26, 2007, the prison superintendent denied Jackson's grievance, stating that the Department "does not list Atheist as a religious preference. You are currently listed as 'No Religious Preference' which most accurately reflects your choice." Doc. No. 129, Ex. 19 at MDOC 6474. On December 4, 2007, Jackson appealed the denial of his grievance. On March 25, 2008, defendant Worsham wrote to the Department's Central Office providing his ruling on Jackson's appeal. He wrote: "The categories for religious declaration involve only MDOC accommodated religions. Atheism is not commonly defined by atheists as a religion but rather a doctrine or philosophy." Doc. No. 129, Ex. 19 at MDOC 6482. Later that day, Jackson's grievance appeal was denied, using the same language Worsham used in his letter. Doc. No. 129, Ex. 19 at MDOC 6469 ("Be advised that the categories

for religious declaration involve only MDOC accommodated religions. Atheism is not commonly defined by atheists as a religion but rather a doctrine or philosophy.").

On or before September 30, 2011, Jackson wrote a letter to Worsham, requesting that atheism be recognized as his religious preference and explaining why he believed he had the right to have the Department recognize atheism as his religion. On November 7, 2011, Worsham rejected Jackson's request to have atheism recognized as a religious preference, stating: "I share your interest in accuracy and proper selection relative to personal religious choices. On the other hand, since Atheism is a philosophy rather than a religion, such would not be accurate as a religious declaration. Your current declaration of 'No Preference' is accurate in that you prefer none of those religions/spiritualities which are listed. Therefore your request would be denied." Doc. No. 129, Ex. 1 at 85.

On or about November 22, 2011, Jackson filed an Informal Resolution Request ("IRR") seeking to have atheism recognized as a religion and reflected on his Face Sheet. On December 21, 2011, Jackson's informal resolution request was denied because "Atheism is a philosophy, not a religion." Doc. No. 129, Ex. 19 at MDOC 6464. On January 4, 2012, Jackson filed a grievance. On or about February 17. 2012, the warden denied Jackson's grievance, stating: "atheism in not recognized as a religion by the department. This should resolve your grievance." Doc. No. 129, Ex. 19 at MDOC 6463. On March 5, 2012, Jackson filed a grievance appeal. On April 9, 2012, Jackson's appeal was denied, using the language earlier provided by Worsham: "Be advised that the categories for religious declaration involve only MDOC accommodated religions. Atheism is not commonly defined by atheists as a religion but rather a doctrine or philosophy." Doc. No. 129, Ex. 19 at MDOC 6461, 6482.

Plaintiff testified that, as an atheist, he has never attended meetings of atheists, before, during, or after his time in prison. Plaintiff also has no specific rituals, no special

days of observance, no food restrictions, and no written texts integral to his practice of atheism or his belief as an atheist. Plaintiff testified he does not consider his atheism a religion but rather a "belief."

**B.    Treatment Claims**

1.    AA and The Big Book

It is undisputed that AA and the Big Book (the Alcoholics Anonymous text) contain spiritual concepts.  The commonly known Twelve Steps of AA are:  (1) We admitted we were powerless over alcohol-that our lives had become unmanageable; (2) Came to believe that a Power greater than ourselves could restore us to sanity; (3) Made a decision to turn our will and our lives over to the care of God as we understood Him; (4) Made a searching and fearless moral inventory of ourselves; (5) Admitted to God, to ourselves, and to another human being the exact nature of our wrongs; (6) Were entirely ready to have God remove all these defects of character; (7) Humbly asked Him to remove our shortcomings; (8) Made a list of all persons we had harmed, and became willing to make amends to them all; (9) Made direct amends to such people wherever possible, except when to do so would injure them or others; (10) Continued to take personal inventory and when we were wrong promptly admitted it; (11) Sought through prayer and meditation to improve our conscious contact with God as we understood Him, praying only for knowledge of His will for us and the power to carry that out; and (12) Having had a spiritual awakening as a result of these steps, we tried to carry this message to alcoholics, and to practice these principles in all our affairs. See ALCOHOLICS ANONYMOUS 59-60. Plaintiff, however, notes that some of the highest ranking substance abuse professionals at MDOC and Gateway do not believe the fundamental beliefs of AA and other 12-Step programs are true: They do not believe that alcoholics are incapable, through their own desires and will power, to control their substance abuse; they do not believe that alcoholics must believe in God or any other

6

"Higher Power" to control their substance abuse. <u>See</u> Doc. No. 129, Cummins depo. at 85:17-86:5 (Ex. C); Nolin depo. at 32:10-13, 67:11-17 (Ex. D).

At all times while plaintiff was incarcerated, MDOC required prisoners in substance abuse programs to participate in at least two hours per week of what is referred to as "self-help" or "support" meetings to graduate from the program with a recommendation to be released on parole. To satisfy the "self-help" or "support" requirement, prisoners are permitted to attend meetings of Christian groups called "Celebrate Recovery" and "Institute of Self-Worth." Department regulations require that all prison treatment facilities "provide other therapeutic activities as an alternative to the alcoholics anonymous/narcotics anonymous meetings." MDOC policy was for staff and contractors to present reasonable alternatives wherever the program incorporates ideations of God and/or higher power. Plaintiff argues that the MDOC and Gateway did not tell prisoners about secular options, however, unless prisoners complained about AA and religious options.

    2.    Plaintiff's Treatment

        a.    Western Reception, Diagnostic & Correctional Center ("WRDCC")[2]

On September 29, 2005, Jackson was sentenced to four years in prison as a DWI persistent offender, and stipulated to participate in the Missouri's Offenders Under Treatment Program, RSMo § 217.364. The Offenders Under Treatment Program is a 180-day program designed to rehabilitate non-violent offenders whose convictions are drug or alcohol-related, so that they can effectively manage their drug and/or alcohol problems and return to society as law-obeying citizens. Plaintiff asserts that MDOC's

---

[2] The Court has already found that many of the claims related to this incarceration are precluded by the statute of limitations. <u>See</u> Order, Doc. No. 83, dated February 6, 2015.

Parole Board routinely approves the application for early parole is a prisoner successfully completes the Offenders Under Treatment Program.

Plaintiff arrived at WRDCC in July 2006. Plaintiff argues that when objected to being required to attend and participate in daily prayer sessions as part of the therapeutic community, Program Director Salsbury and other staff advised that he did not actually have to believe in God, he needed only to "act as if," which was a phrase used in the program to mean taking on "a role or attitude even if you don't feel like it" – a "tool used to assist one in 'trying on' new patterns of thought and behavior." At that time, plaintiff argues that KCCC staff suggested that Jackson use the word 'God' as an acronym for "good orderly direction" and to think of "Higher Power" as "what it was that he used to give him direction." Plaintiff states that he informed MDOC of his concerns, and requested he be placed in a program that was not religiously oriented. On August 29, 2006, Jackson voluntarily withdrew from the program on the ground that its required activities conflicted with his sincere religious convictions. On October 6, 2006, Jackson filed an Offender Grievance, stating that he was an Atheist and requesting that he be offered a nonreligious substance abuse treatment program. On November 22, 2006, Jackson's grievance was denied.

On March 8, 2007, the Missouri Board of Probation and Parole denied Jackson his time credit release consideration, stating: "Because you have not completed a Board stipulated treatment program, the Board is denying your credit release date. Your previously scheduled release date will remain in effect." Jackson was conditionally released from prison on January 20, 2008.

b. Ozark Correctional Center ("OCC")

On December 2, 2010, Jackson was sentenced as a chronic DWI offender and received a seven-year sentence, with an Order that he complete the Long Term Substance Abuse Treatment program (LTTP) for early release. Plaintiff testified that if

8

he completed the program, he could be released in two years. Under Jackson's plea agreement, the Circuit Court of St. Louis County ordered Jackson "to participate in and successfully complete: Long Term Treatment Program for offenders with serious substance abuse addictions as screened and approved by the Missouri Board of Probation and Parole," pursuant to § 217.362 RSMo.

Plaintiff arrived at OCC to begin his treatment under the LTTP on March 8, 2011. MDOC contracted out the operation of the substance abuse program at OCC to Gateway. The substance abuse program at OCC required Gateway to provide treatment to approximately 650 prisoners. Gateway received no funds from the federal government; instead, it was paid by the Missouri Department of Corrections. Plaintiff indicates that when he arrived at OCC, he received a copy of The Big Book. Plaintiff reported that the trailers where classes occurred at OCC had the AA 12-Steps and prayers posted on the walls, and the study area has the Serenity Prayer painted on the wall. The OCC Prisoner Handbook informed prisoners that they were required to attend at least 2 "self-help" groups per week to graduate from the program. Alternatives to the 12-step program were not discussed in the handbooks.

On March 8, 2011, the same day he arrived at OCC, Jackson sent a "line of communication" to his counselor, Mr. Gillum, requesting a meeting to discuss the requirement to attend AA meetings and carry The Big Book. Jackson was the only prisoner then at OCC to complain about its policies regarding carrying The Big Book and 12-Step meetings. Plaintiff states he attended AA meetings until he was given permission not to do so on March 15, 2011. On March 16, 2011, plaintiff met with Robert Johnson, the Clinical Director for Gateway Foundation at OCC, who told plaintiff that he would no longer have to carry The Big Book or attend 12-Step meetings. At this meeting, Johnson told plaintiff that OCC did not require a belief in a higher power, adherence to the 12-step program, or attendance at religious based meetings or any

type of prayer. Plaintiff told Johnson that he had previous experience with treatment in MDOC, and doubted that OCC's treatment program would comply with his constitutional rights and that he intended to file suit regarding his treatment at WRDCC. After the March 16 meeting, Johnson performed research to find a secular self-help treatment program that plaintiff could initiate at OCC, and that was suitable for plaintiff's specific needs, and identified the Smart Recovery plan. Jackson's initial treatment plan was required by contract to be prepared no later than March 18; but no treatment plan was in place by that time.

Plaintiff argues that even after he had been excused from attended the "self-help" 12-Step meetings, he was required to and attended the Program's non-self-help courses, where the focus and assignments were very often taken directly from The Big Book (defendants however, reiterated that plaintiff has admitted he was excused from AA classes and meetings and excused from AA assignments). Plaintiff argues that after he was excused from the AA requirements, he was treated with resentment and hostility, and argues that prisoners were encouraged to punish him for his nonconformance. Plaintiff further argues that after he objected to assignments from The Big Book, he was given longer and more difficult assignments; defendants, however, dispute this.

On March 22, 2011, an entry was made in plaintiff's treatment notes by Robert Johnson, stating: "Received information from the Deputy Warden that Mr. Jackson is spending considerable time in the library working on his legal case. Phase I members do not have access to the library as a Phase I privilege unless a pending legal matter is imminent. According to classification staff, Mr. Jackson does not have an imminent legal case pending." On March 25, 2011, Johnson received the Smart Recovery materials he had ordered for Jackson to use, and began working on a treatment plan for Jackson. On April 8, Johnson met with Jackson and presented his treatment program to plaintiff.

10

The April 8 Treatment Plan identified two "self-defeating behavior/problem[s] that block [Jackson's] success:" (1) "client has a history of alcohol use which has led to numerous arrests and incarceration yet questions the need for treatment;" and (2) "client feels that traditional treatment/recovery programs that rely on higher power are ineffectual for him." Johnson testified, however, that he was trying to state that the AA based treatment plaintiff had experienced in the past did not work due to plaintiff's atheism beliefs, and as a result, a treatment plan was designed that was not based on the traditional AA steps. The Treatment Plan included numerous assignments and target dates for completion. Jackson's action plan included: "In lieu of attending AA/NA designated support groups. write four pages each week on one of the right living concepts in the handbook using materials provided. Study the 'Smart Recovery' program. Develop a plan to implement meetings. And start new meetings." To satisfy MDOC's self-help requirement, Jackson was told he needed to organize and facilitate a Smart Recovery group by June 8, 2011. Plaintiff indicates he requested a staff member help organize and facilitate the program, but argues that Gateway staff refused to help Jackson develop, organize or facilitate a Smart Recovery self-help program. The Gateway defendants, however, argue that plaintiff chose not to use Smart Recovery because he did not think the program would be available to him in the community once he was released from prison.

Gateway employee Janelle Murphy was plaintiff's primary counselor during his treatment at OCC, and she handled plaintiff's case following the April 8 meeting. Plaintiff alleges that on April 28, 2011, he was put in the "Encounter Circle," where he was told that atheism was getting in the way of the program. Plaintiff also argues that he was not given permission to view Smart Recovery DVDs; however, Janelle Murphy testified that plaintiff had plenty of opportunity to see the videos and plaintiff was resisting the Smart Recovery program.

On May 13, plaintiff indicates he met with defendant Cummins to discuss his progress. Also on May 13, in her weekly summary, Murphy writes: "Client is still expressing resistance to the AA and NA concepts of the program. Client reports he does not believe in religion." Plaintiff requested Gateway staff confirm that the Parole Board would accept Smart Recovery for purpose of early release and that when prisoners were released on parole or probation, they could continue to use Smart Recovery rather than attend AA or NA meetings; plaintiff argues that staff never looked into or answered his questions. Plaintiff also testified that, rather than give him assignments based on a genuinely secular substance abuse approach, Johnson, Murphy and other counselors made plaintiff read religious materials and write reports explaining why he objects to the 12-Steps, how he was being a baby for not participating in 12-Step meetings, how his refusal to participate in 12-Step groups was a "self-defeating behavior," and even to read an essay -- to other prisoners following the 12-Steps – explaining why he objects to AA and the 12-Steps. Defendants dispute this.

On May 31, 2011 Jackson filed an IRR objecting to the dominance of religion in his treatment program and asserting it violates his First Amendment rights. Jackson did not organize and start facilitating a Smart Recovery self-help group by the June 8 deadline in his Treatment Plan. On June 9, Jackson was given a "Behavior Contract," which he signed on June 10. The June 10 Behavior Contract required, among other things, that he "defend why he is different and unique, higher and more privileged than others in treatment, and since he has these special needs, the rules do not apply to him." Defendants note, however, that one of the reasons stated for the Behavior Contract was that plaintiff was not turning in his assignments; therefore, defendants argue that being "different and unique" did not refer to plaintiff's atheism, but rather his failure to do work. On June 16, 2011, Johnson denied Jackson's informal resolution request, stating: "A belief in a supreme being, or higher power, is not required to

12

successfully complete the treatment program." On June 21, 2011, Johnson wrote an email to several of the highest MDOC and Gateway officials overseeing the OCC program, indicating "I fully expect him to pursue legal action. We are not going to satisfy Mr. Jackson regardless of the steps we take to accommodate his needs. … he intends to pursue his grievance beyond the local level. He is likely to also pursue redress through the court system." Johnson depo. at 82:16-87:4; Doc. No. 129, Ex. 4H at MDOC 6603.

On June 28, Gateway required plaintiff to sign a second Behavior Contract. See Doc. No. 129, Ex. 4B at 6666-69.  Among the items assigned to Jackson to study to correct his criminal thinking was an essay called "King Baby."  Doc. No. 129, Ex. 4B at MDOC 6666-68 ("Client will read 'King Baby' and discuss with his sponsor how he has been displaying 'King Baby' syndrome and will submit a reflection paper on this discussion to include sponsors [sic] comments.").  Plaintiff argues that the thesis of the "King Baby" essay is that people who do not turn their lives over to God are infantile, and the only treatment option for alcoholics is to turn control of their lives over to God. Plaintiff read the essay and complained; thereafter, he was not required to complete the written assignment related to King Baby.  Notably, defendant Cummins had previously removed "King Baby" from the bookshelves at OCC because he believed it was inappropriate for any prisoner; therefore, plaintiff argues that Gateway staff members purposely sought out and obtained copies of "King Baby" that they gave to plaintiff. When he was alerted to the fact that Jackson was assigned to read and write a report on "King Baby", Johnson notified the Cummins, the Program Director, saying: "You won't believe this." Cummins depo. at 116:2-17.

On July 8, 2011 Jackson filed an Inmate Grievance, wherein he requested to be transferred to another treatment program that is free of religious requirements. On July 15, 2011, Program Director Cummins signed a letter denying Jackson's grievance,

claiming Gateway had no authority to transfer him to another treatment center. Ed Davis, the warden at OCC, signed the letter on July 19, 2011. On July 20, Cathy Farr, Jackson's primary counselor, and Jill Newman, the counselor supervisor, referred Jackson to the Program Review Committee for termination. Doc. No. 129, Ex. 4B at MDOC 6622-23. Among the reasons they offered was that Jackson's "attitude and behaviors regarding his religious beliefs have caused on-going strife in both wings he has been assigned to. … According to numerous and recurring peer reports he continues to attempt to 'recruit' people to his atheistic views and to an alleged lawsuit he is filing in which he claims violation of his constitutional rights. This has lead [sic] to peer conflicts including heated arguments & verbal intimidation. [H]e has attempted to have his roommate stop reading his Bible in his room as it 'offends him', this incident & many others like it has caused chaos in 2D and lead [sic] to him being encountered last night." Doc. No, 129, Ex. 4B at MDOC 6622. On August 2, 2011, Jackson was discharged from treatment. One of the reasons given for the discharge was the plaintiff "did not successfully complete his treatment plan due to lack of effort, not turning in assignments or not turning them in on time, not showing up for groups, classes or community service on time or at all." Ex. 10 to Gateway Defendants' motion for summary judgment. Plaintiff denies that these reasons are true, but admitted at deposition that he occasionally failed to turn in assignments or turned them in late, and that he failed to show up for groups, classes, or community services on occasion.

On July 28, 2011 Jackson filed an Offender Grievance Appeal. On or about August 15, 2011, Marta V. Nolin, Assistant Division Director, Substance Abuse Services in the Division of Offender Rehabilitative Services, denied Jackson's Grievance Appeal, stating: "I see nothing to indicate that your constitutional rights were violated." Doc. No. 129, Ex. 4J at MDOC 6543. On November 1, 2012, Jackson filed an IRR, again requesting to be placed in a program that does not incorporate AA or other "Higher

14

Power" treatment principles; the IRR was denied on November 7, 2012. On November 20, 2012, Jackson filed an Offender Grievance requesting a non-religious substance abuse program, which was denied on November 26, 2012, by Tipton Correctional Center Warden Douglas Prudden, who stated that issues of probation and parole "are non-grievable issues." On December 14, 2012, Jackson filed an Offender Grievance Appeal, which was denied by Alan Earls, Deputy Director, Division of Adult Institutions, on February 5, 2013. Because Jackson did not complete the OCC program, he was not eligible early release and instead, plaintiff argues he served three years longer in prison than he otherwise might have.

c.      Maryville Treatment Center ("MTC")

Plaintiff was transferred to MTC on May 30, 2013. Plaintiff testified that on the walls of the rooms and hallways at MTC are prayers, quotes from the Big Book, and other religious information. Plaintiff testified that the morning meetings at MTC included prayer. Plaintiff states he met with MTC staff and explained his religious objections to AA/NA and other spiritual recovery programs. They said he could use the "Sober But Stuck" program, which they told him is *not* a religious program. Doc. No. 129 Ex. 1 at 289-90. However, as noted by defendants, plaintiff testified he refused to sign up for treatment at MTC and never started treatment.   Plaintiff depo. at 170:14-19. Plaintiff argues that the only programs offered at MTC were either explicitly Christian programs or 12-Step programs. See Plaintiff depo. at 166:15-167:4 ("you see AA, NA, Sober But Stuck and Celebrate Recovery. … All four of those are NA, AA or NA/AA based."); *id*. at 173:2-23 ("I went to at least one Sober But Stuck meeting, and that's when I read the book, and the book is totally based on AA.").

On June 24, 2013, Jackson filed an IRR requesting he be sent to a secular treatment program. Gateway terminated Jackson from the MTC Program the very next day -- June 25, 2013 -- for not participating in the treatment program (for refusal to sign

15

into the treatment program). Jackson's IRR requesting a secular program was denied on July 8, 2013. The denial states: "Religion/Spirituality are not part of the curriculum at Maryville Treatment Center." Doc. No. 129, Ex. 4R at MDOC 6528.

Jackson filed a Grievance regarding his treatment at MTC on August 9, 2013. On August 22, 2013, Warden Collins denied the Grievance. In so doing he acknowledged that "Maryville Treatment Center does not dispute that religion and spirituality are a part of the curriculum at MTC." In September 2013, Jackson filed an Offender Grievance Appeal. Deputy Division Director, Cyndi Prudden, denied Jackson's grievance appeal. Because Defendants reported that Jackson did not complete the stipulated 12-Step treatment programs, the Parole Board denied him work release and good time credit. Jackson was released in December 2014.

## III.    Standard

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–90 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586–90.

A nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

> The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

16

<u>Torgerson v. City of Rochester</u>, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citations and quotations omitted).

For qualified immunity cases, however, "once the predicate facts have been established, … there is no such thing as a 'genuine issue of fact' … The conduct was either 'reasonable under settled law in the circumstances,' or it was not … ." <u>Pace v. City of Des Moines</u>, 201 F.3d 1050, 1056 (8th Cir. 2000) (<u>quoting</u> <u>Hunter v. Bryant</u>, 502 U.S. 224, 228 (1991)) (citation and alterations omitted). The "predicate facts" include only the relevant circumstances and the acts of the parties: conclusions or arguments about the *reasonableness* of those circumstances or those actions are *not* genuine disputes of material fact that would preclude summary judgment. <u>Id.</u>

## IV. Plaintiff's Motion for Partial Summary Judgment (Doc. No. 129)

Plaintiff moves for partial summary judgment, requesting the Court enter a declaratory judgment finding that a variety of alleged Missouri Department of Corrections and Gateway policies and practices, as implemented, violate the First Amendment's Free Exercise and Establishment Clauses. <u>See</u> Doc. No. 129, pp. 1-2. Plaintiff argues that declaratory judgment is appropriate, as if he prevails it would clarify the remaining dispute regarding appropriate injunctive relief, and if defendants prevail, the case would appear to be over. <u>See</u> Doc. No. 129, p. 2.

In response, both the State Defendants and the Gateway Defendants note that (1) declaratory and injunctive relief are not available to plaintiff because he has been released from custody; (2) he cannot show as a matter of law that his First Amendment Rights were violated; and (3) the declarations sought are regarding the treatment of atheists generally by the Missouri Department of Corrections ("MDOC") and Gateway, not declarations regarding the defendants' specific treatment of plaintiff, and plaintiff does not have standing to pursue the rights of hypothetical, unidentified inmates or

17

Case 2:12-cv-04018-NKL   Document 153   Filed 09/26/16   Page 17 of 40

atheists generally. The Court finds defendants' first argument regarding mootness to be persuasive.

Defendants note that plaintiff was released from custody in 2014, and therefore his claims for injunctive and declaratory relief are now moot. <u>See e.g.</u>, <u>Hickman v. Missouri</u>, 144 F.3d 1141, 1142-43 (8th Cir. 1998) ("Because plaintiffs have been released on parole and are no longer confined at WMCC, their claims are moot"); <u>Martin v. Sargent</u>, 780 F.2d 1334, 1337 (8th Cir. 1985); <u>Inman v. Missouri Dept. of Corrections</u>, 139 S.W.3d 180, 185-86 (Mo. Ct. App. 2004) (noting, in a First Amendment Challenge to AA and NA programs within the MDOC, "Claims for equitable relief become moot upon a prisoner's release from custody or transfer from the institution in which he suffered the conditions of confinement which formed the basis for the equitable claims"); <u>Smith v. Hundley</u>, 190 F.3d 852, 855 (8th Cir. 1999) (holding that an inmate's claims for declaratory and injunctive relief related to the prison denying the inmate items for the practice of his religion were rendered moot when he was transferred to a different facility and was no longer subject to those conditions); <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991); <u>McKinnon v. Talladega County, Ala.</u>, 745 F.2d 1360, 1363 (11th Cir. 1984). Defendants argue that since plaintiff is no longer incarcerated, he is no longer suffering from the alleged conditions giving rise to his equitable claims, which must now be dismissed.

In response to the defendants' motions for summary judgment on this same issue, plaintiff argues that his claims for declaratory and injunctive relief are not moot. Here, plaintiff notes that even where a claim is "no longer live," a court may decide the issue anyway where: (1) the plaintiff has secondary or collateral injuries in the form of damages, (2) the conduct complained about is capable of repetition yet evading review, or (3) the case is properly certified as a class action. <u>See</u> <u>Nat'l Right To Life Political Action Comm. v. Lamb</u>, 202 F. Supp. 2d 995, 1004 (W.D. Mo. 2002), <u>aff'd sub nom.</u>

Nat'l Right to Life Political Action Comm. v. Connor, 323 F.3d 684 (8th Cir. 2003). Plaintiff argues he meets all of these exceptions, as (1) his claim for damages survives his release from prison, as he maintains defendants' policies caused him to spend an extra three years in prison and further arguing that the "Court cannot rule on plaintiff's damages claims without first declaring whether defendants' conduct violated the First Amendment"; (2) his claim are capable of repetition yet evading review, because the MDOC's substance abuse treatment programs are too short for prisoners to exhaust administrative remedies, and there is a reasonable expectation that plaintiff, a repeat DUI offender who has been charged with or convicted of DUI 13 times, will be subject to the same action again; and (3) plaintiff is seeking declaratory and injunctive relief on behalf of a class of similarly situated present and future prisoners, noting that the Court invited plaintiff to file a second motion for class certification after the Court rules on summary judgment. See Doc. Nos. 118 and 128.

In reply, defendants argue that none of plaintiff's purported exceptions to mootness apply here. Defendants note that they are not arguing that plaintiff's damages claims are moot – only plaintiff's claims for injunctive or declaratory relief are moot. Defendants argue that plaintiff presents no case law supporting his theory that injunctive claims survive despite his release from prison just because he also has damages claims. With respect to the "capable of repetition yet evading review" exception, defendants note plaintiff was incarcerated from 2006-08, and again from 2010-2014, and could have easily litigated his case within that time period, and in the prison context courts routinely find claims for injunctive relief moot upon release from prison. As for the second prong ("a reasonable expectation that the same complaining party will be subject to the same action again,"), defendants argue that plaintiff is "effectively asking the Court to grant him relief from the mootness doctrine because he may go out and again endanger the lives of innocent people on Missouri's roadways."

19

Defendants argue that it cannot be the law that plaintiff's otherwise moot claims can be resurrected by the argument that he will go out and commit another crime. Compare Hickman, 144 F.3d at 1143 (finding that courts are generally unwilling to assume the party seeking relief will repeat the type of misconduct that would place that party back in prison). Finally, defendants argue that just because class allegations were pled does not mean that otherwise moot claims can be resurrected. As noted by defendants, in order for a class to be certified, plaintiff would have to be an adequate representative of a class, with claims typical of other class members. Fed. R. Civ. P. 23(a)(3) & (4). Here, because plaintiff's claims are moot, he would not be an adequate class representative, nor could his claims be typical of class members who are currently imprisoned.

The Court finds that, for the reasons stated by defendants, plaintiff's claims for injunctive and declaratory relief are moot, and therefore plaintiff's motion for summary judgment (Doc. No. 129) must be **DENIED.**

## V. State Defendants' Motion for Summary Judgment (Doc. No. 130)

The State Defendants (Collins, Crawford, Earls, Lombardi, Nolin, Prudden, and Worsham, collectively) move for summary judgment for the following reasons: (1) Plaintiff's claims for injunctive relief are moot because he was released from the custody of the MDOC in 2014; (2) plaintiff's RLUIPA claim that his rights were violated because "atheism" is not an option on MDOC's religious intake form fails because he cannot show that it burdened his practice of religion under the free exercise clause, nor can he show that the form violates the establishment clause; (3) plaintiff cannot show that his First Amendment and RLUIPA rights were violated with regard to his participation in treatment programs, as he has no facts demonstrating he was forced to participate in Alcoholics Anonymous ("AA") as a condition of parole, and instead when he objected to AA on religious grounds he was not required to attend AA meetings or AA materials in

his treatment program; (4) state defendants are entitled to qualified immunity on plaintiffs' claims; (5) claims for monetary relief against the State Defendants must be dismissed because under the Prison Litigation Reform Act ("PLRA"), prisoners cannot recover monetary damages for mental or emotional injury absent a prior showing of physical injury; (6) RLUIPA claims against state defendants in their individual capacities fail because there is no individual liability under RLUIPA; and (7) the claims against defendant Crawford are outside the statute of limitations and should be dismissed.

### A. Mootness

As discussed immediately above in relation to plaintiff's motion for summary judgment, the Court finds all plaintiff's claims for declaratory and injunctive relief are moot. Therefore, the State Defendant's Motion for Summary Judgment is **GRANTED** on this issue, and plaintiff's claims for declaratory and injunctive relief are dismissed.

### B. Claim re Inability to Declare "Atheism" on Intake Form/Face Sheet

State defendants argue that the undisputed evidence in this case shows that plaintiff's inability to declare "atheism" on his intake form or face sheet had does not violate either (1) the free exercise clause or RLUIPA, 42 U.S.C. §2000cc-1(a), et seq. or (2) the establishment clause. The Court considers both issues below.

#### 1. Free Exercise Clause and RLUIPA

"[W]hen faced with both a Free Exercise claim and a RLUIPA claim, a court must, as a threshold matter, inquire as to whether the prison has placed a 'substantial burden' on the prisoner's ability to practice his religion." Gladson v. Iowa Dep't of Corr., 551 F.3d 825, 833 (8th Cir. 2009).

> To constitute a "substantial burden," government policy or actions must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion. . . . "When the significance of a religious belief is not at issue, the same definition of 'substantial burden' applies under the Free Exercise Clause ... and RLUIPA."

Gladson, 551 F.3d at 832 (internal citations omitted).

Under the RLUIPA,

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a)(1)–(2). RLUIPA protects inmate religious exercise "when the substantial burden is imposed in a program or activity that receives Federal financial assistance." Id. § 2000cc–1 (b)(1). RLUIPA defines the term "religious exercise" as "including the exercise of religion, whether or not compelled by, or central to, a system of religious belief." Id. § 2000cc–5(7)(A); Van Wyhe v. Reisch, 581 F.3d 639, 648–49 (8th Cir. 2009). Furthermore, "RLUIPA's broad protection of 'religious exercise' extends even to religious practices that are not 'compelled by, or central to' a certain belief system." Van Wyhe, 581 F.3d at 655–56.

State defendants argue that plaintiff's claims regarding the intake form/face sheet fail at the first stage, as plaintiff cannot demonstrate that failure to list atheism on those forms constitutes a substantial burden on his ability to exercise his religion. State defendants argue that this is because there are no practices that accompany his belief as an atheist; he attends no meetings of atheists, there are no rules regarding atheism, no rituals or special days of observance occur, and there are no food restrictions of texts integral to his practice. Plaintiff testified that he does not consider atheism a religion but rather a "belief." Jackson Depo. at 191:16-21. He further testified, "My beliefs are essential to myself. I don't have to do anything or participate in any activity to have my belief." Id. at 191:6-10.

State defendants argue that, without anything to do or participate in, plaintiff's free exercise of atheism could not have been substantially burdened by the state not including atheism as a category on the intake form/face sheet. As discussed above, to demonstrate substantial burden, plaintiff must demonstrate that the policy in question either must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion. Van Wyhe v. Reisch, 581 F.3d 639, 656 (8th Cir. 2009); Gladson v. Iowa Dep't of Corr., 551 F.3d 825, 833 (8th Cir. 2009). Notably, if an inmate has not set forth sufficient evidence of a substantial burden under the RLUIPA, he cannot demonstrate a substantial burden under the First Amendment either. Van Wyhe, 581 F.3d at 657-58. Here, state defendants argue that without any religious (or belief) practices that were limited by the state, the inability to list "atheism" on his face sheet did not substantially burden plaintiff. Furthermore, state defendants indicate that to the extent that plaintiff wanted to express his beliefs to others, he was allowed to do so, noting that plaintiff testified he made it clear to prison officials that he disapproved of their alcohol treatment programs because he was an atheist. Jackson Depo. at 194:12-16 (Ex. 1). He further admitted that upon his objection to AA, he was told he did not have to participate in AA meetings. Id. at 66:12-17; 85:16-19.

In response, plaintiff argues that he repeatedly objected to having his religion identified as "No Religious Preference" or "Unknown" on his Face Sheet, because those labels do not accurately describe his religious convictions. He argues that when he requested MDOC add "Atheist" to the religious preference form and face sheet, the MDOC refused such a request, stating that "No Religious Preference" accurately described his religion. Plaintiff argues that MDOC's policy of preventing atheists from

expressing their religious preference on the face sheet is a "substantial burden" on plaintiff's free exercise and RLUIPA rights, citing to the Court's previous decision denying defendants' motion to dismiss on this issue. See Doc. No. 83, Order dated Feb. 6, 2015. The Court, however, did not intend that Order to be the final word on whether plaintiff had demonstrated a "substantial burden"; instead, as stated in that Order, the Court found "that plaintiff has **adequately alleged** that the inability to list atheism as his religion on his facesheet substantially burdened plaintiff's ability to exercise his religion." Doc. No. 83, p. 13-14 (emphasis added). Obviously, adequately alleging something for purposes of a 12(b)(6) inquiry is not the same as meeting one's burden of proof on summary judgment by setting forth facts showing how plaintiff was substantially burdened.

Plaintiff goes on to argue that he believes that "it is an important part of expressing his adherence to his religious conviction (atheism) that his religious beliefs *not be misrepresented* by MDOC on his prison face sheet. Plaintiff very understandably finds it *offensive* to his sincerely-held religious beliefs that MDOC identifies his religion as 'No Religious Preference,' 'Unknown,' or 'Other.'" Doc. No. 141, p. 11. Plaintiff notes that in a formal grievance, filed on August 23, 2007, he indicated, "Left, as is, with 'No Religious Preference' as the response to 'Religion' one could come to the conclusion that I am religious, but without a preference to a denomination of faith. ... [M]y belief system is just as important to me as any religion is to someone of that conviction and should be afforded the same respect, opportunity and acknowledgement of a recognized religious faith." Id. (citing Doc. No. 129-36, p. 15). Plaintiff argues that the Free Exercise Clause and RLUIPA protect more than conduct; they protect "a person's ability to express adherence to his or her faith." Gladson, 551 F.3d at 832. Plaintiff argues that the state defendants' policy of requiring atheists to identify as "no religious

preference," "unknown" or "other" on their face sheets is a substantial burden on atheists' ability to express adherence to their religious views.

In their reply, state defendants reiterate that the Court should focus on whether the MDOC put a substantial burden on plaintiff's ability to practice his religion. State defendants note that plaintiff does not consider atheism to be a religion, but rather a belief, and that only thing he did to practice his atheism was to "wake up." Jackson Depo, at 191:2-5. Plaintiff further has not identified any practices or exercises related to atheism that MDOC failed to accommodate. Instead, the only practice plaintiff has identified where state defendants prohibited him from practicing atheism relates to his allegations regarding AA and other alcohol treatment programs in the MDOC; those allegations are addressed separately in this Order.

Upon consideration of the arguments raised by the parties, the Court finds that plaintiff has not demonstrated that the failure to include "atheism" on the intake form/face sheet substantially burdened plaintiff's practice of religion. It is apparent from the record that plaintiff was allowed to object to religious components in AA and other treatment programs within MDOC. Plaintiff has pointed to nothing, other than his own belief, that identifying as having "no religious preference" instead of "atheist" burdened him in any meaningful way. No evidence shows that the state defendants' actions significantly inhibited or constrained plaintiff's conduct or expression by not including "atheist" on the face sheet. No evidence shows that the state defendants meaningfully curtailed plaintiff's ability to express adherence to his or her faith by not including "atheist" on the face sheet. Nor does any evidence show that the state defendants denied plaintiff reasonable opportunities to engage in those activities that are fundamental to his religion by not including "atheist" on the face sheet. Accordingly, state defendants' motion for summary judgment is granted as to any RLUIPA claims and Free Exercise claims related to the intake forms/face sheets.

2.      Establishment Clause

Defendants argue that the absence of the word "atheist" on the face sheet does not demonstrate an establishment clause violation. See Murphy v. Missouri Dept. of Corrections, 372 F.3d 979, 985 (8th Cir. 2004) (holding that the showing of various Christian and Muslim video programming was not evidence that MDOC exclusively promoted or favored any one religion, nor was it evidence of inhibiting plaintiff's exercise of his own religion, but it was evidence of promoting religious exercise within the limits of institutional security needs). The 8th Circuit applies the test set forth in Lemon v. Kurtzman, 403 U.S. 602, 612 (1971), which provides that the government action does not violate the Establishment Clause if it has a secular purpose, does not have a primary effect of advancing or inhibiting religion, and does not result in excessive entanglement with religion. Murphy, 372 F.3d at 985.   State defendants note that the purpose of the face sheets is to accommodate prisoners of different religious faiths. See Worsham depo. at 49:25-51:11 and 87:15-20.     Examples of religious accommodations include allowing attendance at religious gatherings held within the prison or meeting religious dietary restrictions, and accommodated groups include, but are not limited to, different types of Christians, Muslims, Jews, and Pagans.   See Worsham depo. at 49:25-51:11.

During plaintiff's incarceration, nonreligious inmates could select "no religious preference" or "unknown."  Worsham Dep. at 58:13-22.  MDOC officials later added the option of "other" to the face sheet religious preference selections. Id. at 58:13-59:10. State defendants argue that, by including an option for "no religious preference," there is no evidence that defendants attempted to inhibit or advance any particular religion.

In response, plaintiff claims that by defining religion so as to exclude atheists, the state defendants conditioned the receipt of substantial benefits on the belief in the supernatural, violating the establishment clause.  The Court, however, finds that plaintiff

26

cannot demonstrate a violation of the establishment clause due to the failure to include "atheism" on the face sheet. Where, as here, plaintiff has testified that he needs no accommodations in order to practice his belief or religion, there is no evidence that the defendants have attempted to advance one belief system over another. The Court, furthermore, does not believe that the MDOC is providing substantial benefits on the belief in the supernatural in violation of the establishment clause; instead, the MDOC uses the face sheets in an attempt to accommodate prisoners who have religious beliefs, as it is also required to do under the constitution. Therefore, plaintiff's establishment clause claims related to the face sheet fail, and state defendants motion for summary judgment as to these claims is **GRANTED.**

### C. Claims re Treatment Programs at MDOC

State defendants argue that the undisputed evidence shows that plaintiff's First Amendment and RLUIPA rights were not violated by any of the treatment programs at the MDOC. The Eighth Circuit found, in remanding this case in 2014, that the Court should analyze plaintiff's Establishment Clause claims as follows:

> In evaluating a plaintiff's claim "that the state is coercing him or her to subscribe to religion generally, or to a particular religion," the Seventh Circuit in *Kerr v. Farrey* described a three-step inquiry: "first, has the state acted; second, does the action amount to coercion; and third, is the object of the coercion religious or secular?" 95 F.3d at 479. The Ninth Circuit has since adopted the *Kerr* criteria in evaluating this type of claim. *See Inouye,* 504 F.3d at 713; *see also Warner,* 115 F.3d at 1075. We agree that *Kerr* is "particularly useful" "with regard to determining whether there was governmental coercion of religious activity." *Inouye,* 504 F.3d at 713. Accordingly, we will apply the *Kerr* court's three-part formulation of the *Lee* coercion test to Jackson's First Amendment claim of governmental coercion.

Jackson v. Nixon, 747 F.3d 537, 542 (8th Cir. 2014)(citing Kerr v. Farrey, 95 F.3d 472, 479 (7th Cir. 1996); Inouye v. Kemna, 504 F.3d 705 (9th Cir. 2007); and Warner v. Orange County Dept. of Probation, 115 F.3d 1068 (2d Cir. 1996).

27

State defendants argue that <u>Kerr</u> is distinguishable from plaintiff's case, as in Kerr, the undisputed evidence was that the correctional center <u>required</u> inmates to use NA, and inmates were subject to penalties if they refused to attend, including being classified as a higher security risk and being ineligible for parole. 94 F.3d at 480-81. Here, state defendants argue that plaintiff cannot demonstrate the <u>Kerr</u> three-part inquiry weighs in his favor, as with respect to the 2011 treatment program at OCC, defendants argue that it is undisputed that plaintiff was not required to attend AA meetings as part of his sentence, that plaintiff has conceded that when he objected to having to attend AA meetings and carry the AA Big Book, he was told that he was not required to attend AA meetings, carry the AA Big Book, or work the AA steps as part of his treatment. Additionally, state defendants argue that plaintiff was provided alternatives to AA, including being given materials to study and facilitate secular self-help groups. Jackson Depo. 144:2-146:4. State defendants argue that because he was given secular alternatives, plaintiff cannot satisfy the second prong of the coercion test. State defendants further argue that plaintiff cannot satisfy the third prong of the <u>Kerr</u> test, as plaintiff was not required to attend AA meetings, carry the AA Big Book, or work the AA steps as part of the OCC treatment program. Furthermore, to the extent that plaintiff frames this claim as a free exercise or RLUIPA claim, defendants argue the claim fails for the same reasons as the face sheet claim, in that plaintiff cannot demonstrate that the treatment program substantially burdened his practice of religion. The state defendants also argue that plaintiff cannot demonstrate religious coercion regarding his treatment at MTC as well. State defendants argue that it is undisputed that although plaintiff was sent to MTC for treatment, he refused the treatment program there and never participated in it.

In response, plaintiff argues that state defendants mischaracterize the facts. Plaintiff states that the facts show that: MDOC and Gateway required every prisoner to

attend at least two "support" or "self-help" meetings per week in order to graduate from the treatment program and receive a recommendation for parole, the only available meetings provided by MDOC were AA, NA, or Christian; at OCC, all new prisoners were given copies of the AA Big Book; and every prisoner in Phase I of treatment was required to carry the Big Book with them to all scheduled activities including "self-help" meetings and marches in the prison yard, chanting praises to a Higher Power. Plaintiff argues that when he objected to AA, he was told to recruit and facilitate his own secular meetings, without assistance from state defendants or Gateway defendants. Plaintiff argues that MDOC cannot cure its unconstitutional faith-based treatment requirements by (a) telling prisoners that they can think of "God" as "Good Orderly Direction," or "what motivates them,"; (b) offering them the opportunity to complete drug treatment if they can, by themselves, recruit and facilitate their own secular group meetings two times per week without assurance that anyone will receive credit for attending the secular meetings, or (c) repeatedly granting exemptions from unconstitutional requirements (eventually) for those who continue to object. Plaintiff argues that state defendants created a coercive environment designed to pressure plaintiff into conforming to the AA ideals, which include acceptance of a "higher power" or Christianity. See Bausch v. Sumiec, 139 F.Supp. 2d 1029, 1035-36 (E.D. Wis. 2001) (finding, in consideration of a motion for summary judgment on plaintiff's claim that mandatory attendance in drug treatment program with religious components violated the establishment clause, "Defendants' assertion that plaintiff needed only to request a secular alternative rings hollow. First, it is government's obligation always to comply with the Constitution, rather than to do so only upon request. Defendants' assertion that they stood ready to provide a secular alternative, if asked, would reduce the evil of government inducements to participate in religiously-based programs only for those brave or resourceful enough to

assert their rights but not for the untold number who feel they have little choice but to comply.") (quotation omitted).

Further, with respect to the free exercise and RLUIPA claims, plaintiff argues that state defendants have put forth no evidence that being required to participate in AA, carry the Big book, read from the Big Book, and attend 12-step meetings does not constitute a substantial burden on plaintiff's rights as an atheist. Although state defendants argue that plaintiff was given other options once he objected to AA and other religious content, plaintiff argues that state defendants and Gateway gave him no feasible path to graduate from the program without attending 12-step or Christian meetings.

Upon considering the facts and arguments presented by the parties, the Court finds that questions of material fact remain as to whether Jackson was given a sufficient opportunity to have a secular alternative accommodation which could reasonably lead to graduation from the MDOC substance abuse program. Viewing the facts and inferences based on those facts in the light most favorable to plaintiff, the Court finds that state defendants have not demonstrated that the claims regarding the treatment programs at OCC and MTC do not run afoul of the First Amendment (free exercise or establishment clause) or RLUIPA. Therefore, state defendants' motion for summary judgment on these claims must be **DENIED.**

### D. Qualified Immunity

Qualified immunity provides governmental officials with immunity from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Supreme Court has established a two-prong analysis for determining whether qualified immunity applies: 1) whether the facts a plaintiff has shown make out a violation of a statutory or constitutional right and 2) whether the right

was clearly established at the time of defendant's alleged conduct. <u>Pearson v. Callahan</u>, 129 S.Ct. 808, 816 (2009) (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)). The two prongs can be considered in any order. <u>Id.</u> at 818. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).

### 1.  Face Sheet Claims

As discussed above, plaintiff's claims regarding failure to list "atheism" on the face sheet fail because he is unable to demonstrate that the absence of that term violates his constitutional rights.   However, even assuming that plaintiff has a constitutional right to have the term "atheism" included on his face sheet, such a claim was not clearly established at the time of defendant's alleged conduct.[3]  Furthermore, the Court cannot find on the facts of this case that the contours of such a right were sufficiently clear that a reasonable person would understand that he was violating plaintiff's rights.  Accordingly, qualified immunity provides further support for the grant of summary judgment as to plaintiff's claims based on the face sheet/intake form.

### 2.  Treatment Programs

As discussed above, the Court finds that there are questions of material fact regarding whether the State Defendants have violated plaintiff's first amendment rights; viewing the facts in the light most favorable to plaintiff, the Court finds that those facts could set forth a constitutional violation.   Defendants, however, argue that when evaluating a response to an inmate's request for religious accommodation, "context matters," and courts must accord deference to the views of prison authorities.  <u>Fowler v. Crawford</u>, 534 F.3d 931, 937 (8th Cir. 2008) (noting, in certain circumstances, courts

_____

[3] The Court notes that it denied state defendants' motion to dismiss on this issue; however, at the time of filing the motion to dismiss, the outlines of plaintiff's claims had not been fully fleshed out with facts.  At this time, with a complete factual record, the Court finds that qualified immunity as to these claims must be granted.

31

must be conscious of the institution's need to maintain order and safety). The state defendants argue that plaintiff has not shown they acted willfully or maliciously, or that they violated clearly established precedent of which they should have been aware.

In response, plaintiff notes that the facts in <u>Fowler</u>, which involved prison officials denying a request to build a Native American sweat lodge, are inapposite to the facts of this case. Plaintiff argues that building a sweat lodge and giving maximum security inmates access to burning fires, hot rocks, split wood, shovels, etc., creates a set of safety concerns. <u>Id.</u> at 942-43. Plaintiff argues that the state defendants do not explain how "context" matters in considering the claim that plaintiff does not want to participate in faith-based treatments; plaintiff argues that defendants have not pointed to any security or financial reasons that would bar plaintiff's requests. Furthermore, plaintiff points to a great deal of clearly established, long-standing precedent supporting a claim that requiring a person to participate in AA while in prison, without offering secular treatment options, violates the First Amendment. <u>See</u>, <u>e.g.</u>, <u>Warner v. Orange County Dept. of Probation</u>, 115 F.3d 1068 (2d Cir. 1996); <u>Kerr v. Farrey</u>, 95 F.3d 472 (7th Cir. 1996). <u>Turner v. Hickman</u>, 342 F.Supp.2d 887 (E.D. Cal. 2004).

In reply, defendants argue that it is "undisputed" that plaintiff Jackson was not required to attend AA meetings, and in all cases cited by plaintiff the institutions required inmates to attend AA. However, plaintiff sets forth sufficient facts demonstrating that he was not given a realistic opportunity to participate in a secular alcohol treatment program, and that failure contributed to him being unable to graduate from an alcohol treatment program while in prison, leading him to spend an additional three years in confinement. Viewing these facts in the light most favorable to plaintiff, the Court finds state defendants have not demonstrated that the right allegedly violated was not clearly established at the time of the alleged violation. State Defendants' motion

for summary judgment on qualified immunity grounds as related to plaintiff's treatment claims is denied.

### E. Claims for Damages against State Defendants in their Individual Capacities

State defendants argue that the Court should grant summary judgment on plaintiff's claims against them in their individual capacities because plaintiff was not physically harmed by the alleged conduct. Defendants assert that under the Prison Litigation Reform Act, ("PLRA"), a prisoner may not assert claims for monetary damages for a mental or emotional injury suffered while in custody without a prior showing of a physical injury. 42 U.S.C. § 1997e(e). State Defendants argue that plaintiff's claims amount to little more than that he was "bothered" when the MDOC staff mentioned AA or God in his presence, even when he was not required to participate.

In response, plaintiff argues that his claims are not mere claims that he was bothered; instead, plaintiff states that state defendants violated his religious rights, gave him no truly secular option to complete alcohol treatment, and retaliated against him for complaining about faith-based meetings and assignments by giving him longer written work to do than other inmates and forcing him to create his own secular self-help group. Plaintiff argues that as a result of this treatment, he spent three additional years in prison, which amounts to a deprivation of physical liberty, a type of physical injury. Plaintiff also argues that he was injured by another inmate while in prison, and his inability to seek early release due to state defendants' actions could be viewed as a cause of that physical injury. Further plaintiff argues that he is at least entitled to nominal damages for violations of his first amendment rights, and he also could be entitled to punitive damages, regardless of the limitations of 42 U.S.C. § 1997e(e).

In reply, state defendants attempt to re-cast this as an attempt not to dismiss all individual capacity claims, but to just dismiss plaintiff's claims against them in their individual capacity for mental or emotional injury. At this stage, the Court finds it would

33

be better for all damages issues to be presented at trial, where full factual development and evaluation of the record could be had. State Defendants' motion for summary judgment as to claims against them in their individual capacities is **DENIED.**

### F. Individual Liability Under RLUIPA

The State Defendants note that plaintiff's RLUIPA claims against the State Defendants in their individual capacities fail as a matter of law because there is no individual liability under RLUIPA. See Blake v. Cooper, 10-CV-6063-SJ-FJG, 2013 WL 523710 at *1, n.1 (W.D. Mo. Feb. 12, 2013) (holding that "there is no individual liability under the RLUIPA" and citing Waff v. Reisch, No. Civ. 07-4166, 2010 WL 3730114 at *11 (D.S.D. July 30, 2010) for proposition that "RLUIPA does not authorize individual capacity claims against prison officials"); see also Van Wyhe v. Reisch, 536 F.Supp.2d 1110, 1118 (D.S.D 2008), aff'd in part, rev'd in part on other grounds, 581 F.3d 639 (8th Cir. 2009). In response, plaintiff concedes that the MDOC defendants are not liable for damages in their individual capacities under RLUIPA. See Doc. No. 141, p. 3, n.1. Accordingly, State Defendants' Motion to Summary Judgment is **GRANTED** on this issue, and plaintiff's RLUIPA claims against the State Defendants in their individual capacities are dismissed.

### G. Statute of Limitations as Applied to Defendant Crawford

State Defendants note that this Court previously held that the statute of limitations for plaintiff's Section 1983 claims is five years and the statute of limitations for RLUIPA claims is four years. Order, Doc. No. 83 at 5; see Walker v. Barrett, 650 F.3d 1198, 1205 (8th Cir. 2011) and Al-Amin v. Shear, 325 Fed. Appx. 190, 193 (4th Cir. 2009). Defendant Crawford asserts that all the claims against him in this suit are based on plaintiff's August 2006 termination from the treatment program at WRDCC, which is outside the statute of limitations. See Amended Complaint, Doc. No. 42, ¶ 85. Therefore, Defendant Crawford argues that plaintiff has failed to state a claim against

him within the statute of limitations period, and all claims against Crawford should be dismissed.

In response, plaintiff indicates that he disagrees with the Court's previous ruling on the statute of limitations, but concedes that under the Court's previous order, his claims against Crawford for conduct relating to his treatment at WRDCC are barred by the statute of limitations. Plaintiff, however, argues that discovery has revealed that Warden Crawford did not forward plaintiff's communications to the MDOC personnel responsible for managing and monitoring MDOC's substance abuse programs, and because Crawford "*actively concealed* the constitutional violations Jackson complained about at WRDCC," (see Doc. No. 141, p. 26), those violations were repeated at OCC and MTC. Therefore, plaintiff argues that the claims related to his 2010-14 incarceration can be linked to Crawford and the claims against Crawford should not be dismissed.

Defendant Crawford replies that the "fact" used to support this argument, from Plaintiff's Statement of Facts at ¶ 141 (Doc. No. 129-1) does not mention Defendant Crawford, and neither does the testimony cited in ¶ 141 (which provides only that Marta Nolin testified she did not receive plaintiff's grievance from WRDCC). This is simply not evidence that Crawford did anything actionable within the limitations period. The Court further notes that such a claim was not pled against Defendant Crawford at all in the Amended Complaint, and the Court is not inclined to allow plaintiff a new theory of recovery after discovery has already closed. Therefore, State Defendants' Motion for Summary Judgment is **GRANTED** on this issue, and the claims against Defendant Crawford are **DISMISSED.**

## VI.    Gateway Defendants' Motion for Summary Judgment (Doc. No. 132)

Gateway Foundation, Inc. and Duane Cummins move for summary judgment on the following bases: (1) they were not acting under color of state law; (2) they received no federal funds, thereby negating the RLUIPA claims against them; (3) Duane

Cummins is not liable under RLUIPA because there is no individual liability under RLUIPA; (4) Plaintiff's claims for injunctive and declaratory relief are moot; and (5) plaintiff cannot demonstrate that these defendants imposed a substantial burden on his right to exercise religion.

### A.    Color of State Law

To state a claim under §1983 a plaintiff must show that the conduct complained of was performed under color of state law. West v. Adkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); Montano v. Hedgepath, 120 F.3d 844, 848 (8th Cir. 1997).   In the present matter, Gateway defendants argue that they were not acting under color of state law, as (1) they were not exercising powers "traditionally exclusively reserved to the State," Jackson v. Metropolitan Edison Co., 419 US. 345, 352 (1974), in that provision of drug and alcohol treatment is not a service traditionally reserved to the State; (2) they were not acting under "state compulsion," where the state exercised such coercive power that the conduct of the private actor is deemed to be that of the state as a matter of law, Brentwood Academy v. Tennessee Secondary School Athletic Association, 531 U.S. 288, 296, and fn3, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001), as there is no evidence the state of Missouri coerced the specific conduct alleged on the part of plaintiff in this lawsuit; and (3) they were not a joint participant in state activity, Adams ex rel. Harris v. Boy Scouts of America-Chickasaw Council, 271 F.3d 769, 777 (8th Cir. 2001).

In response, plaintiff notes that the MDOC is required by law to operate substance abuse treatment programs within its prisons, see R.S.Mo. §§ 217.362, 217.364, and successful completion of these programs can lead to offenders being released early from prison.   MDOC contracted with Gateway to operate the statutorily mandated substance abuse treatment programs relevant to this action.   Plaintiff notes that while drug and alcohol treatment outside of prison is not traditionally performed by

the state, here the drug and alcohol treatment was statutorily required to be performed by MDOC. MDOC gave Gateway custody of prisoners, and assigned Gateway the responsibility of running the substance abuse treatment programs on MDOC's behalf; consequently, plaintiff argues that Gateway acts under color of state law. See, e.g., Americans United for Separation of Church and State v. Prison Fellow Ministries, 509 F.3d 406 (8th Cir. 2007); Smith v. Cochran, 339 F.3d 1205 (10th Cir. 2003) ("persons to whom the state delegates its penological functions, which include the custody and supervision of prisoners, can be held liable for violations of the Eighth Amendment" in a § 1983 action).

Plaintiff argues that the ultimate question in examining whether private actors are acting under color of state law is whether the actions may "fairly be attributed to the State." Brentwood Academy v. Tennessee Secondary School Case Athletic Ass'n, 531 U.S. 288, 295-96 (2001). Actions can fairly be attributable to the state when they are: (1) "caused by the exercise of some right or privilege created by the State or . . . by a person for whom the State is responsible" and (2) "the party charged with the deprivation ... may fairly be said to be a state actor." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). Plaintiff argues both those requirements are satisfied here, as (1) Gateway defendants treated plaintiff only because he was a prisoner and (2) Gateway was paid pursuant to a contract to fulfill the state defendants' statutory alcohol treatment responsibilities.

In reply, Gateway defendants argue that none of the cases cited by plaintiff involved drug or alcohol treatment providers, but rather involved programs where the entire care of inmates had been assigned to private entities. Gateway argues that it has not been given traditional functions of a prison, and therefore should not be found to have engaged in state action. The Court finds, however, that the cases should not be read as narrowly as suggested by Gateway defendants. Here, the MDOC has assigned

37

to a private company activity that it is statutorily required to do by the Missouri legislature. That private company treated plaintiff only because he was a prisoner. In this circumstance, the Court finds that the Gateway defendants were acting under color of state law sufficient to be found liable under Section 1983. Thus, Gateway defendants' motion for summary judgment on this issue is **DENIED.**

### B. RLUIPA Claims

Gateway Defendants argue that it is well established that RLUIPA does not permit suits against persons in their individual capacities. <u>Nelson v. Miller</u>, 570 F.3d 868, 888-89 (7th Cir. 2009); <u>Blake v. Cooper</u>, No. 10-CV-6063-SJ-FJG, 2013 WL 523710 (W.D.Mo. Feb. 12, 2013). Furthermore, Gateway defendants argue that because they did not receive federal funds for the alcohol and drug treatment services provided, the RLUIPA claims against them must be dismissed as a matter of law. <u>See Nelson v. Miller</u>, 570 F.3d at 886-89. Gateway defendants note that although the RLUIPA defines "government" to include persons "acting under color of State law," this law was enacted pursuant to the Spending Clause of the U.S. Constitution, and in <u>Nelson</u>, 570 F.3d at 886-87, the Court recognized that Congress had the authority to attach conditions on the receipt of federal funds, creating a contract between the federal government and the state receiving the federal funds. Thus, only the party contracting with the federal government may be held liable under RLUIPA. Here, it is undisputed that Gateway Foundation Services, Inc. was paid by the Missouri Department of Corrections, not the federal government, and therefore Gateway argues that all claims against it and its employee Duane Cummins must be dismissed.

In response, plaintiff argues that the cases cited by defendants are cases involving sovereign immunity as applied to state workers. Plaintiff, therefore, argues that because Gateway and Cummins are private contractors they are not entitled to sovereign immunity. Plaintiff implies that the Court has already decided this issue in

38

plaintiff's favor at the motion to dismiss stage, and no further examination is necessary. However, upon consideration of the motion to dismiss, the Court stated: "Finally, defendants Gateway and Cummins claim that because they did not receive federal funds, RLUIPA does not apply to them. Defendants, however, have provided no factual support for their statement that they did not receive federal funds, and such an argument would be more appropriately raised on summary judgment." Doc. No. 106, p. 5. As Gateway defendants have now provided support for their statement that they did not receive federal funds, the Court finds that the reasoning of <u>Nelson v. Miller</u> controls, and Gateway defendants cannot be held liable under the RLUIPA because they did not receive federal funds. Accordingly, summary judgment is **GRANTED** as to all plaintiff's claims against the Gateway defendants under the RLUIPA.

### C. Mootness

As discussed above in relation to plaintiff's motion for summary judgment, the Court finds all plaintiff's claims for declaratory and injunctive relief are moot. Therefore, the Gateway Defendant's Motion for Summary Judgment is **GRANTED** on this issue, and plaintiff's claims for declaratory and injunctive relief are dismissed.

### D. Substantial Burden on Plaintiff's Religious Exercise

As discussed above in relation to the state defendants' motion, the Court finds that questions of material fact remain as to whether the treatment programs in place in the MDOC violated plaintiff's first amendment free exercise rights. Therefore, Gateway defendants' motion for summary judgment is denied on this issue.

## VII. Conclusion

Accordingly, for the foregoing reasons:

1) Plaintiff's Motion for Partial Summary Judgment (Doc. No. 129) is **DENIED;**

2) State Defendants' Motion for Summary Judgment (Doc. No. 130) is **GRANTED IN PART** as related to plaintiff's claims for declaratory and injunctive relief, plaintiff's claims related to the face sheet/intake form,

plaintiff's claims for individual damages under RLUIPA, and the claims against Defendant Crawford and **DENIED IN PART** in all other relevant aspects;

3)      Motion for Summary Judgment on Behalf of Defendants Gateway Foundation, Inc. and Duane Cummins (Doc. No. 132) is **GRANTED IN PART** as related to plaintiff's claims for declaratory and injunctive relief and plaintiff's claims under RLUIPA and **DENIED IN PART** in all other relevant aspects; and

4)      Plaintiff's Motion to Supplement the Court Record (Doc. No. 148) is **GRANTED**.


**IT IS SO ORDERED**.


Date:    September 26, 2016        **S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri                    Fernando J. Gaitan, Jr.
                                          United States District Judge