# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| RANDALL JACKSON, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:15-04018-CV-NKL |
| ISAAC SONNY COLLINS, et al., | ) |
| Defendants. | ) |

## ORDER

Plaintiff Randall Jackson asks the Court to reconsider and vacate, Doc. 180, two Orders previously entered in this case: an Order denying Jackson's motion for partial summary judgment, Doc. 153 (entered 9/26/2016), and an Order denying Jackson's second motion for class certification, Doc. 167 (entered 1/30/2017). The motion is denied.

**I.     Background**

Jackson is an atheist. Following convictions relating to driving while intoxicated, he was incarcerated in Missouri Department of Corrections prisons from 2006-2008 and 2010-2014. Jackson originally filed this case *pro se* in 2012, alleging that the Missouri Department of Corrections violated his rights under the First Amendment. He alleged that he was subject to a parole stipulation requiring him to attend and complete a substance abuse program, and that the Department was coercing him to participate in religion-based programming, Alcoholics Anonymous, in order to gain access to the benefit of early parole.

The Hon. Fernando Gaitan dismissed the case with prejudice under 28 U.S.C. § 1915, but the decision was reversed on Jackson's appeal. *Jackson v. Nixon,* 747 F.3d 537 (8th Cir. 2014); Doc. 21.[1] The Eighth Circuit held that while inmates have no constitutional right to early parole,

---

[1]     Once at the appeal stage, Jackson obtained counsel.

Jackson did have the right to be free from unconstitutional burdens when availing himself of existing ways to access the benefit of early parole. The Eighth Circuit held that he had "pled facts sufficient to state a claim that a parole stipulation requiring him to attend and complete a substance abuse program with religious content in order to be eligible for early parole violates the Establishment Clause of the First Amendment." 747 F.3d at 543; Doc. 21, p. 8.

Jackson then filed his First Amended Complaint, including class allegations. Doc. 42. Jackson alleged that he is a sincere and committed atheist, and that his practice of atheism includes not participating in prayer to supernatural beings; accepting responsibility for his own life; and refusing to admit that ultimate responsibility for his actions depends on the intervention of a supernatural being. Doc. 42, pp. 12-13, ¶¶ 38 and 40. He alleged that the Department's repeated refusal to permit him to be expressly and specifically identified as an atheist in his prison file violates the First Amendment and RLUIPA, and asked that the Department be required to amend its forms to permit an inmate to indicate his religious preference as atheism, and to be identified on the face sheet in his prison files as an atheist. *Id.* at pp. 35-36. Jackson also alleged that officials from the Department, and Gateway Foundations, Inc., the company that the Department hired to administer substance abuse treatment programs in the Missouri prisons, violated his rights as an atheist by requiring him to participate in substance abuse treatment programs in the prisons such as Alcoholics Anonymous, which requires its participants to recognize and rely upon a "Higher Power" to remedy their problems with alcohol. Jackson made claims on behalf of himself and a putative class under both: (1) 42 U.S.C. § 1983, through the First and Fourteenth Amendments to the United States Constitution; and (2) the Religious Land Use Institutionalized Persons Act, 42 U.S.C. § 2000cc-1.

In February 2015, Judge Gaitan granted in part the State Defendants' motion to dismiss.

Doc. 83 (Order dated 2/16/2015).[2] In May 2015, the judge entered an Order denying Jackson's first motion for class certification without prejudice, and permitting Jackson to file another motion after discovery and rulings on summary judgment. Doc. 96 (Order dated 5/8/2015). The primary reason the judge denied the motion was Jackson's failure to demonstrate numerosity under Fed. R. Civ. P. 23(a)(1). Defendant Gateway and Cummins' motion to dismiss was denied in June 2015. Doc. 106 (Order dated 6/23/2015).

After discovery, Jackson moved for summary judgment on his claim that certain Missouri Department of Corrections practices should be declared unconstitutional and enjoined.[3]

---

[2] The following claims were dismissed: (1) damages claims against the State Defendants in their official capacities; (2) RLIUPA claims against the State Defendants in their individual capacities; (3) claims related to actions taken in 2006 as barred by the statute of limitations; and (4) all claims against Defendant Salsbury, the director of the treatment program at one of the prisons. *See* Doc. 83.

[3] In his motion for partial summary judgment, Jackson summarized the Defendants' practices that allegedly violated the First Amendment's Free Exercise and Establishment Clauses as follows:

(1) refusing to recognize atheism as protected by the First Amendment religion clauses (MDOC);
(2) excluding atheism from the Department's list of religious preferences prisoners may choose (MDOC);
(3) excluding persons who profess to be atheists from the benefits and privileges given to prisoners who profess to believe in one of MDOC's approved religions (MDOC);
(4) teaching prisoners, in required classes, to follow the directives of AA, NA and other 12-Step programs, despite their spiritual and religious nature (Gateway and MDOC);
(5) mandating that 12-Step and other "spiritual" drug rehabilitation programs be provided without taking the necessary steps to assure that a secular alternative to the spiritual programming is genuinely available (MDOC);
(6) requiring prisoners to attend "support" or "self-help" programs without taking the necessary steps to assure that a secular alternative to 12-Step and other religious meetings is genuinely provided (MDOC);
(7) requiring prisoners to issue new prisoners copies of the AA Big Book (Gateway and MDOC);
(8) requiring prisoners to carry the AA Big Book with them (Gateway and MDOC);
(9) requiring prisoners, as a part of required activities, to chant in praise of a "Higher Power" (Gateway and MDOC);

3

Defendants moved for summary judgment on all claims. Judge Gaitan denied Jackson's motion, ruling that the claim for equitable relief had become moot when Jackson was released from prison in December 2014, and granted Defendants' motion for summary judgment with respect to that claim. Doc. 153 (Order dated 9/26/2016). The judge further granted the Defendants' motions for summary judgment with respect to Jackson's claim that the Department of Corrections' refusal to permit him to expressly identify himself as an atheist on prison forms violated his First Amendment rights, as well as Jackson's claim for individual damages under RLUIPA. *Id*.[4]

Jackson then moved for class certification for a second time, seeking to represent the following classes under Fed. R. Civ. P. 23(b)(2):

- All prisoners who are eligible or ordered to receive substance abuse treatment in one of MDOC's substance abuse treatment programs and who would object to the faith-based requirements of those programs, if MDOC made clear the availability of a genuinely secular, non-faith-based program, and the prisoners could trust MDOC not to prolong their custody because they objected to the religious components or selected a secular path.

- All prisoners in MDOC's custody who do not believe in a god.

---

(10) "strongly encouraging" prisoners to participate in 12-Step programs even after the prisoner has raised religious objections to such programs (Gateway and MDOC);
(11) requiring prisoners to object to practices and assignments that they know (or should know) to be unconstitutional before exempting the prisoner from such requirements (Gateway and MDOC);
(12) requiring prisoners who object to the religious nature of 12-Step programs to perform extra and more difficult assignments than the prisoners who raise no objection to 12-Step programs (Gateway and MDOC); and
(13) requiring prisoners to defend their religious objections to 12-Step programs as part of their allegedly "secular therapy" (Gateway and MDOC).

Doc. 129, pp. 1-2.

[4] Judge Gaitan noted that Jackson's surviving claim for trial was for damages based on whether he was given a sufficient opportunity to have a secular alternative accommodation which could reasonably lead to graduation from the Department's substance abuse program. Doc. 153, p. 30.

4

Doc. 155, p. 10.  Jackson sought only declaratory and injunctive relief for these proposed classes. Judge Gaitan denied the motion to certify, on the bases that Jackson failed to meet any of the requirements of Rule 23(a), and that the mootness of Jackson's claims for declaratory and injunctive relief meant the Rules Enabling Act operated to prohibit Jackson from serving as a class representative.  Doc. 167 (Order dated 1/30/2017).  Jackson filed a petition for leave to file an interlocutory appeal in the Eighth Circuit, which was denied.  Doc. 169 (Court of Appeals Judgment dated 3/9/2017).

Judge Gaitan subsequently recused himself from this case, Doc. 172 (Order dated 3/24/2017), and the case was randomly reassigned.

In his motion to reconsider and vacate, Jackson asks this Court to review Judge Gaitan's rulings *de* novo, and identifies the following reasons why his motion should be granted:

- "Judge Gaitan incorrectly ruled that plaintiff's claims for declaratory relief are moot."

- "Judge Gaitan erred in finding that plaintiff…cannot be a class representative because he is no longer subject to the policies he challenges."

- "Judge Gaitan incorrectly granted summary judgment against plaintiff on his claim that the State's refusal to permit him to accurately identify his religion as 'atheism' on prison identification forms [in violation of] the First Amendment and RLUIPA."

- "Judge Gaitan erred in denying plaintiff's second motion for class certification[,]" specifically because "a. Certifying plaintiff's proposed class does not violate the Rules Enabling Act" and "b. Numerous people are subject to and offended by [the Missouri Department of Correction's challenged policies."

Doc. 180, pp. 24, 25, 27, 31, and 33 of 38.

## II. Discussion

### A. The standard for reconsideration of the two Orders.

Generally, a district court has broad discretion in determining whether to grant a motion

to reconsider. *In re Levaquin Products Liab. Litig.*, 739 F.3d 401, 404 (8th Cir. 2014). However, such a motion "serve[s] a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Arnold v. Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010). It "is not a vehicle for simple reargument on the merits." *Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999). In other words, motions to reconsider do not generally start over consideration of previously-ruled motions.

Jackson argues, however, that Judge Gaitan's impartiality may be called into question in view of the timing of the recusal, *i.e.,* the judge had already presided over the case for several years, Doc. 180, pp. 22-23 of 28, and because a portion of the ruling on Jackson's motion for summary judgment "is internally inconsistent," which "shows bias against" him, Doc. 186, p. 2. Therefore, he argues, this Court should consider the Orders *de novo*. Doc. 189, p. 23 of 28 (and citations therein). Nothing in Jackson's motion to reconsider convinces this Court that *de novo* review is appropriate.

Judge Gaitan's recusal order simply states that he recuses and directs that the case be transferred. Doc. 171. There are, of course, numerous reasons why a judge may recuse from a case over which he has presided for several years, from avoiding having to travel to conduct trial in another city, to choosing to decrease one's case load, to reasons provided under 28 U.S.C. § 455, which addresses judicial disqualification. In any event, "[j]udges are under no obligation to provide a statement of reasons for recusal[.]" *United States v. Casas,* 376 F.3d 20, 23 (1st Cir. 2004). Rather, they are "presumed to be impartial, and a party seeking recusal of a judge must bear the substantial burden of proving otherwise." *Roe v. St. Louis Univ.*, 746 F.3d 874, 886 (8th Cir. 2014) (internal quotations and citation omitted). Therefore, the Court begins with a presumption of impartiality.

As for Jackson's substantial burden to prove otherwise, none of the authorities that he

cites suggests that the timing of the recusal suffices to show bias or partiality[5], nor is the Court aware of any such authority. It is also well-established that "adverse rulings alone are not evidence of bias." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Indeed, a contrary inference would be illogical here, inasmuch as Judge Gaitan issued adverse rulings against both Jackson and the Defendants throughout the proceedings. Doc. 153. The Court concludes that whether considered singly or together, Jackson's arguments are insufficient to carry his substantial burden to overcome the presumption of impartiality, and that the *de novo* standard does not apply to his motion to reconsider.

Apart from the recusal argument, Jackson's motion to reconsider is at core a reargument of the merits. He cites no new law or newly discovered evidence. The Court has the discretion to deny the motion for this reason alone. *See Broadway*, 193 F.3d at 990 (the fact that a motion to reconsider was simply a reargument of the merits was a sufficient reason alone for the Court of Appeals to conclude the district court had not abused its discretion in denying the motion). The Court will nevertheless examine whether Jackson has identified manifest errors of law or fact that must be corrected.

---

[5] For example, Jackson cites *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988), a case concerning extrajudicial bias. There, a district court judge presided over a bench trial concerning declaration of ownership of a corporation. After judgment was entered for the defendant, the plaintiff learned that the judge had a fiduciary interest in the litigation due to his position as a board member of a third party that was negotiating a land purchase with the defendant, and that the success of those negotiations turned in large part on the defendant prevailing in the litigation before the judge. The Supreme Court held that the district judge violated 28 U.S.C. § 455 by failing to disqualify himself.

Another case that Jackson cites is *Sentis Grp., Inc., Coral Grp., Inc. v. Shell Oil Co*, 559 F.3d 888 (8th Cir. 2009), in which the Eighth Circuit held that a different judge should preside over the case on remand, where the original judge directed salty language at the plaintiffs, adopted the defendants' mischaracterization of the discovery orders, apparently distrusted the plaintiffs as manifested early in the litigation, and relied on an affidavit in ruling against the plaintiffs without giving them an opportunity for discovery or a hearing as to its contents.

Neither these nor any of the other authorities that Jackson cites involve a finding of bias or partiality, or the appearance thereof, based merely on the timing of a recusal order.

### B. Mootness of Jackson's claim for equitable relief, and Jackson's inability to represent a class seeking equitable relief.

Judge Gaitan denied Jackson's motion for summary judgment on his claim for declaratory and injunctive relief concerning the alleged invalidity of the Department of Corrections' and Gateway's practices, and granted the Defendants' motion for summary judgment on the same claim. Doc. 153, pp. 17-21. The judge held that because Jackson had been released from prison in 2014, Jackson's equitable claim had become moot. In doing so, the judge noted the long line of case law cited by the Defendants, from the Eighth Circuit, other federal Courts of Appeal, and the Missouri Court of Appeals, which held that once an inmate is no longer incarcerated, or has been transferred out of the prison in which he suffered conditions of confinement that led to his equitable claims, such claims were moot and therefore had to be dismissed. *Id.* at p. 18.[6]

Judge Gaitan also addressed Jackson's argument that the court could nevertheless decide the merits because he also had a claim for damages; the issue was capable of repetition yet evading review; or the case was properly certified as a class action. *Id.* at p. 18.[7] The judge rejected the argument, for the reasons given by the Defendants. Specifically, the damages claim had not been held moot and was not moot. As for the issue of capable of repetition yet evading

---

[6] *Citing Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (holding that an inmate's claims for declaratory and injunctive relief related to the prison denying the inmate items for the practice of his religion were rendered moot when he was transferred to a different facility and was no longer subject to those conditions); *Hickman v. Missouri*, 144 F.3d 1141, 1142-43 (8th Cir. 1998) ("Because plaintiffs have been released on parole and are no longer confined at WMCC, their claims are moot"); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *McKinnon v. Talladega County, Ala.,* 745 F.2d 1360, 1363 (11th Cir. 1984); and *Inman v. Missouri Dept. of Corrections*, 139 S.W.3d 180, 185-86 (Mo. App. 2004) (holding, in a First Amendment challenge to AA and NA programs within the Missouri Department of Corrections, that "[c]laims for equitable relief become moot upon a prisoner's release from custody or transfer from the institution in which he suffered the conditions of confinement which formed the basis for the equitable claims").

[7] *Citing Nat'l Right to Life Political Action Committee v. Lamb,* 202 F.Supp.2d 995 (W.D. Mo. 2002), *aff'd sub nom. Nat'l Right to Life Political Action Committee v. Connor,* 323 F.3d 684 (8th Cir. 2003).

review, Jackson had been incarcerated from 2006 to 2008, and again from 2010 to 2014, which the judge held was enough time to have litigated the case, and further noting that courts routinely find such injunctive relief claims moot upon an inmate's release. In addition, the judge concluded that a plaintiff's otherwise moot claims cannot be resurrected by the argument that he will proceed to commit another crime. *Id.* at p. 20.[8] The judge also concluded that Jackson would not be an adequate class representative, and that his claim would not be typical of class members who are currently imprisoned. *Id.*[9]

Jackson cites no authority at odds with the line of cases the judge cited in holding that an inmate's release from prison generally moots his claim for equitable relief with respect to prison policies, inasmuch as such relief would no longer have any real-world effect. The law is well-established and continues to be followed in this and other circuits. *See, e.g., Owens v. Isaac,* 487 F.3d 561, 564 (8th Cir. 2007) (explaining that a prisoner's or detainee's request for injunctive relief is moot if he is no longer subject to the allegedly unconstitutional condition or practice); *Hanks v. Prachar,* 457 F.3d 774, 775 (8th Cir. 2006) (same); and *Washington v. Byrd*, 2012 WL 925148, at *4 (E.D. Ark. Mar. 16, 2012) (same). *See also Jordan v. Sosa*, 654 F.3d 1012, 1030 (10th Cir. 2011) (same), and *Burke v. N. Dakota Dep't of Corr. & Rehab.*, 2004 WL 612779, at *3 (D.N.D. Mar. 22, 2004) (same).

Instead, Jackson focuses on the arguments that he seeks to represent a Rule 23(b)(2) class of future prisoners subject to the same practices; he has standing to seek equitable relief; and his injury is capable of repetition yet evading review, because the treatment programs last 180 days to one year, with a statutory maximum of two years, Mo. Rev. Stat. §§ 217.362.2 and 217.364.2. Doc. 180, pp. 24-25. Jackson's standing and class representation arguments fail because his

---

[8] *Citing Hickman v. Missouri*, 144 F.3d at 1143 (finding that courts are generally unwilling to assume the party seeking relief will repeat the same type of misconduct that would place the party back in prison).

[9] *Citing* Fed. R. Civ. P. 23(a)(3) and (4).

claim for equitable relief is moot and, as discussed below, the capable of repetition yet evading review exception does not apply. First, the "requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Nat'l Right to Life Political Action Comm. v. Connor*, 323 F.3d 684, 691 (8th Cir. 2003) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000)). A federal court does "not have jurisdiction over cases in which 'due to the passage of time or a change in circumstance, the issues presented ... will no longer be 'live' or the parties will no longer have a legally cognizable interest in the outcome of the 'litigation." *Id.* (quoting *Van Bergen v. Minnesota,* 59 F.3d 1541, 1546 (8th Cir.1995)). Due to a change in circumstances—Jackson's release—Jackson's claim for equitable relief is no longer live and the federal court therefore lacks jurisdiction.

Furthermore, "where [a] named plaintiff's personal claim becomes moot prior to a district court's ruling on certification of a class action, the court loses jurisdiction over the action because the case or controversy requirement of Article III is violated." *Shipman v. Missouri Dep't of Family Servs.,* 877 F.2d 678, 682 (8th Cir. 1989). *See also Spears v. Thigpen,* 846 F.2d 1327, 1328 (11th Cir. 1988), *cert. denied,* 488 U.S. 1046 (1989) ("Absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred." (Quotation omitted.)); *Dunn v. Dunn,* 2016 WL 6949598, at *4 (M.D. Ala. Nov. 25, 2016) (injunctive and declaratory claims brought by plaintiffs in a putative class action, who had been released from custody, were moot and therefore dismissed); and *Clarke v. Lane*, 267 F.R.D. 180, 190 (E.D. Pa. 2010) (claims for equitable relief in putative class action, brought by plaintiffs who complained of their treatment in a prison facility from which they had been released, were moot; dismissal of the plaintiffs' claims prior to class certification was appropriate). Jackson's equitable claim therefore became

moot and subject to dismissal.

The capable of repetition yet evading review exception to mootness does not save the claim. The rule "applies only in exceptional situations, where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again[.]" *Spencer v. Kemna,* 523 U.S. 1, 5 (1998) (internal quotations and citations omitted). *See also Randolph v. Rodgers*, 170 F.3d 850, 856 (8th Cir. 1999 (describing the capable of repetition yet evading review rule as an "extraordinary and narrow exception to the mootness doctrine"). It was Jackson's burden to demonstrate that both prongs were met, *see Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005) ("The party asserting that this exception applies bears the burden of establishing both prongs.") (and cases cited therein), which he failed to carry.

As for the evading review prong, "the focus of [the court's] analysis ... is not on the length of time over which the particular action challenged occurred." *Hickman*, 144 F.3d at 1143 (citing *Clark v. Brewer,* 776 F.2d 226, 229 (8th Cir. 1985)). "Rather, the proper inquiry is whether the [challenged] activity is *by its very nature short in duration,* so that it could not, or probably would not, be able to be adjudicated while fully alive." *Id.* (emphasis in original; internal quotation omitted). For example, in *Clark,* the Eighth Circuit held that a challenge to a prison's segregation policy satisfied the prong because the "segregation [would] normally terminate and the inmate [would] be returned to the general penitentiary population long before a challenge to his segregation ... [could] be litigated fully." 776 F.2d at 229. In *Hickman,* in contrast, the plaintiff-inmates were confined at a prison facility that allegedly failed to accommodate them under the Americans with Disabilities Act, but they were paroled before their case was fully litigated. The district court dismissed their claims for declaratory relief as moot.

The Eighth Circuit affirmed because the plaintiffs failed to show "that the duration of the alleged illegal conditions is always so short as to evade review." 144 F.3d at 1143 (citing *Spencer,* 118 S.Ct. at 988). *See also Roe v. Wade,* 410 U.S. 113, 125 (1973) (explaining that the "human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete"); *Nat'l Right to Life Political Action Comm. v. Connor*, 323 F.3d 684, 691 (8th Cir. 2003) (election issues are "among those most frequently saved from mootness by this exception"); and *Van Bergen v. Minnesota,* 59 F.3d 1541, 1547 (8th Cir. 1995) (election issues "are almost invariably of too short a duration in which to complete litigation"). Here, Jackson admits that the treatment programs available at the prisons generally last 180 days to one year, with a statutory maximum of two years. Nothing in evidence shows that the alleged illegal conditions are always so short as to evade review.

Nor can Jackson meet the capable of repetition prong. In *Hickman,* the Eighth Circuit rejected the plaintiffs' argument that the prison conditions were capable of repetition because the plaintiffs might violate their paroles and be reincarcerated. The court explained: "The plaintiffs are in control of the type of conduct that will put [them] in jail again and subject [them] to the same deprivations alleged in [their] complaint." *Hickman*, 144 F.3d at 1143 (quoting *Reimers v. Oregon,* 863 F.2d 630, 632 n. 4 (9th Cir. 1988)). "Indeed, they are 'required by law to prevent such a possibility from occurring.'" *Id.* (quoting *Spencer v. Kemna,* 91 F.3d 1114, 1118 (8th Cir. 1996), *aff'd,* 523 U.S. 1, (1998)). Likewise here, the Court may not conclude that Jackson's alleged injury may repeat itself because he is likely to reoffend and be incarcerated in a Department prison again.

Jackson has not demonstrated any manifest error of law or fact in relation to Judge Gaitan's rulings concerning mootness of the claim for equitable relief and inability to represent a class claim for equitable relief.

### C. Summary judgment against Jackson on his claim that the State's refusal to permit him to identify his religion as "atheism" on prison identification forms violates the First Amendment and RLUIPA.

Inmates in Department of Corrections prisons have face sheets in their files that list, among other things, their religion. This information is gathered at the time of intake, when the Department permits inmates to choose from a form with a list of religions and options of "No Religious Preference," "Unknown," and "Other."[10] "Atheism" is not listed on the form, so Jackson checked "No Religious Preference." Doc. 131-1, p 31 of 33.

Judge Gaitan held that the Department's refusal to expressly identify an inmate's atheism in prison files did not violate the Free Exercise Clause or RLUIPA, or the Establishment Clause. Doc. 153, pp. 21-27. The judge explained that both the Free Exercise Clause and RLUIPA required Jackson to demonstrate that the Department's practice substantially burdened his practice of religion. *Id.,* pp. 21-23.[11] The judge discussed the evidence. Specifically, Jackson selected "No Religious Preference" because atheism was not an option on the form. Jackson repeatedly asked prison officials to list "atheism" in his prison files, but they refused. He testified that he made clear to prison officials that he was an atheist, and that he objected to the treatment programs offered in the prison on the basis that they were religion-based and he was an atheist. Doc. 131-1, p. 31-32 of 33. He testified that he does not consider atheism a religion, but does consider it a "belief." *Id.*, p. 30 of 33. He explained, "My beliefs are essential to myself. I don't have to do anything or participate in any activity to have my belief." *Id.* He attends no meetings of atheists, he observes no rituals, and there are no food restrictions, texts, or special days of observance integral to his practice of atheism. *Id.*, pp. 28-29 of 33. He testified that the only thing he did to practice atheism was wake up. *Id.*, p. 30 of 33.

---

[10] "Other" was added to the form after Jackson entered prison.
[11] *Citing Gladson v. Iowa Dep't of Corrections,* 551 F.3d 825 (8th Cir. 2009); *Van Wyhe v. Reisch,* 581 F.3d 639 (8th Cir. 2009); and 42 U.S.C. § 2000cc-1(a)(1)-(2), (b)(1), and 5(7)(A).

Judge Gaitan acknowledged Jackson's argument that it was important to his religious convictions not to be misrepresented by the information in his prison files, and that the options offered by the prison forms—"No Religious Preference," "Unknown," and "Other"—could lead someone to believe he was religious, but without a preference as to denomination. *Id.*, p. 24. The judge stated that Jackson "very understandably" found the Department's approach "offensive." *Id.* However, the judge concluded, Jackson had not demonstrated that the failure to include "atheism" on the prison forms substantially burdened his practice of religion. The judge explained that it was apparent from the record that Jackson was allowed to object to religious components in AA and other treatment programs; that Jackson had pointed to nothing, other than his own belief, that being identified as having "no religious preference" instead of "atheist" burdened him in any meaningful way; no evidence showed that the state defendants' actions significantly inhibited or constrained Jackson's conduct or expression by not including "atheist" on the forms, or that the state defendants meaningfully curtailed his ability to express adherence to his faith by not including "atheist" on the face sheet; nor that any evidence showed that the state defendants denied him reasonable opportunities to engage in those activities that are fundamental to his religion by not including "atheist" on the forms. Accordingly, Judge Gaitan granted the state defendants' motion for summary judgment as to any RLUIPA claims and Free Exercise claims related to the prison forms. *Id.,* p. 25.

As for Jackson's allegation of an Establishment Clause violation, Judge Gaitan applied the test set forth in *Lemon v. Kurtzman,* 403 U.S. 602 (1971), the test that the Eighth Circuit uses. Doc. 153, p. 26.[12] Under the *Lemon* test, government action does not violate the Establishment

---

[12] *Citing Murphy v. Mo. Dep't of Corrections,* 372 F.3d 979, 985 (8th Cir. 2004) (citing *Lemon* and holding that the showing of various Christian and Muslim video programming was not evidence that the Department exclusively promoted or favored any one religion, nor was it evidence of inhibiting plaintiff's exercise of his own religion, but was evidence of promoting religious exercise within the limits of institutional security needs).

Clause if it has a secular purpose, does not have a primary effect of advancing or inhibiting religion, and does not result in excessive entanglement with religion. *Id.,* at 612. Judge Gaitan explained that the evidence showed the purpose of the forms was to accommodate prisoners of different religious faiths, such as by allowing attendance at religious gatherings within the prison or meeting religious dietary restrictions. Doc. 153, p. 26. However, Judge Gaitan noted, Jackson had testified that he needed no accommodations in order to practice his belief or religion, and there was no evidence that the Defendants had attempted to advance one belief system over another. The judge continued, "The Court, furthermore, does not believe that the [Department of Corrections] is providing substantial benefits on the belief in the supernatural in violation of the establishment clause; instead, the [Department] uses the face sheets in an attempt to accommodate prisoners who have religious beliefs, as it is also required to do under the constitution." *Id.*, p. 27. Therefore, the Defendants were granted summary judgment on Jackson's Establishment Clause claims related to the prison forms. *Id.*

In his motion for reconsideration, Jackson argues that the Department rejected his requests to list atheism on his face sheet on the ground that atheism is not a religion but a philosophy, and never asked him if he had any rituals to accommodate. He further argues that the Department's acknowledgment of certain religions has an independent significance apart from any accommodations an inmate might request because not every religion that inmates can choose from is entitled to accommodations. He adds that if the purpose of identifying which inmates need which accommodations, then the form would not include "No Religious Preference," "Unknown," or "Other." Finally, he says that inmates who do not believe in gods are entitled to the "simple dignity of having their religion accurately designated on their Face Sheet (which would cost the [Department] nothing, and pose no security risk." Doc. 186, p. 5. The fact that the Department will not permit atheists to be identified as atheists "shows an

unconstitutional bias favoring supernatural religions." *Id.*

The Court concludes that Jackson has not demonstrated any manifest error of law or fact. As for the Free Exercise and RLUIPA claim, "a court must, as a threshold matter, inquire as to whether the prison has placed a 'substantial burden' on the prisoner's ability to practice his religion." *Gladson*, 551 F.3d at 833. It was Jackson's burden to establish that the Department placed a substantial burden on his sincerely-held religious belief by refusing to list him as an atheist on prison forms. *Id.* at 833. Jackson did not carry it. He demonstrated no burden, let alone a substantial one, associated with the Department's refusal. He admitted that he requires no accommodations to practice his faith and made clear to prison officials that he would not participate in AA-style or faith-based programs because he is an atheist. Whether the list that the prison works from in order to identify which inmates require religious accommodations is an imperfect one, in that it is over- or under-inclusive, as Jackson argues, does not demonstrate that the Department placed a substantial burden on Jackson's ability to practice his religion. Nothing in the record shows that the Department would have treated Jackson differently had he been listed as an "atheist" on his face sheet.

Jackson's Establishment Clause argument also fails. A government action does not violate the Establishment Clause if it has a secular purpose, does not have a primary effect of advancing or inhibiting religion, and does not result in excessive entanglement with religion. *Lemon,* 403 U.S. at 612. In *Murphy,* 372 F.3d at 981-82, for example, members of a religious group, who believed that Caucasians were uniquely blessed and must separate themselves from non-Caucasians, were denied the opportunity to broadcast programming on the prison's religious programming television channel, based the Department's security concerns. The Eighth Circuit rejected the prisoners' Establishment Clause claim. *Id.* at 985. The court held that the programming on the religion channel promoted religious freedom and a broad spectrum of ideas

within the prison, but there was no evidence that the Department "exclusively promotes or favors any one particular religion in its programming. The primary effect of [the Department's] religious programming choices" was not to inhibit the plaintiffs' "religion but to promote religious exercise within the limits of institutional security needs." *Id.*

Jackson points to no evidence that in seeking to gather information about who requires accommodations to practice his religion, the Department's use of a prison form that does not expressly identify atheists has the "primary effect" of "advance[ing] or inhibit[ing]" a religion. If, as Jackson argues, some religions expressly identified on the list do not require accommodations, such fact only underscores that the use of the form does not have the primary effect of advancing or inhibiting a religion. In any event, consistent with *Murphy,* the Department may constitutionally promote religious exercise by inmates.

Jackson has not demonstrated any manifest error of law or fact in relation to Judge Gaitan's ruling concerning the prison forms, and First Amendment and RLUIPA claim.

### D. The denial of Jackson's second motion for class certification

Judge Gaitan denied Jackson's second motion for class certification because Jackson did not personally possess the substantive rights of the classes that he sought established, and he failed to demonstrate that he met any of the requirements of Rule 23. Doc. 167, p. 5. Jackson specifically takes issue with Judge Gaitan's holdings that certifying the class would violate the Rules Enabling Act, 28 U.S.C. § 2072(b), and that numerosity was not satisfied for purposes of Rule 23(a)(1). Doc. 180, pp. 31 and 33 of 38. Jackson does not specifically challenge Judge Gaitan's holdings that he failed to meet the other Rule 23 requirements, which were stand-alone bases for denying class certification. Therefore, Jackson has failed to demonstrate a manifest error of law or fact justifying the setting aside of the Order.

### E. Other argument

In his reply brief, Jackson argues for the first time, "Plaintiff's motion for partial summary judgment on his claim that defendants coerce prisoners to attend and participate in faith-based treatments, and provide no genuinely secular path to early parole should be granted," Doc. 186, p. 6, based on the Establishment Clause, Free Exercise Clause, and equal protection, *id.*, p. 9. The Court rarely relies on new arguments in reply briefs because the non-moving party did not have an opportunity to respond. *See United States v. Head*, 340 F.3d 628, 630 n.4 (8th Cir. 2013) ("When courts have exercised their authority to decline consideration of issues raised in reply briefs, they have typically done so out of concern that the opposing party would be prejudiced by an advocate arguing an issue without an opportunity for the opponent to respond."). The Court declines to analyze Jackson's new argument. In any event, and as discussed above, Judge Gaitan denied Jackson's motion for partial summary judgment on the basis of mootness and this Court will not vacate the order.

### III. Conclusion

For the foregoing reasons, Plaintiff Jackson's motion to reconsider and vacate, Doc. 180, is denied.

                                          s/ Nanette K. Laughrey
                                          NANETTE K. LAUGHREY
                                          United States District Judge

Dated: May 31, 2017
Jefferson City, Missouri